**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **Robert I. Unanue,** | § § § § | |
| **Plaintiff,** | § § § | |
| **v.** | § § | **Case No. 25-3573** |
| **Goya Foods, Inc. and Francisco R. Unanue,** | § § § § § | |
| **Defendants.** | § § § | |

---

### ORIGINAL COMPLAINT

---

Robert I. Unanue files this Complaint against Goya Foods, Inc. ("Goya") and Francisco Unanue ("Defendants") (collectively, the "Parties") for breach of his Agreement for Deferred Compensation, defamation, and quantum meruit.

### SUMMARY OF THE COMPLAINT

1.    Robert Unanue worked at his family's business – Goya Foods – for 60 years. He rose from packing olives to President and CEO, a position he held for 20 years. And he propelled the company to great heights as he rose through the ranks. Not only in terms of growing the business but also deepening the business' social impact.

2.    But a faction within Robert Unanue's family had different plans for Goya. So, they orchestrated his removal as longtime President and CEO of the company. And they did so by defaming him to Goya's board of directors, the company employees, the

press, and other courts. Ultimately, Robert Unanue was terminated from his position as President and CEO of Goya as a result. And now Goya refuses to honor its contractual obligation to compensate Robert Unanue following his termination.

3.      This Court should hold Francisco Unanue and Goya responsible for the improper and illegal actions perpetrated against Robert Unanue.

### JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1131 (federal question jurisdiction) and 29 U.S.C. § 1001, et seq. (Employee Retirement Income Security Act of 1974).

5.      The Court further has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1132 because the Parties are diverse and the amount in controversy exceeds $75,000.

6.      Venue is proper in this district and division pursuant to 29 U.S.C. § 1132(e)(2) because Defendants maintain business activity in and may be found in this district, and 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district and division.

7.      Pursuant to 29 U.S.C. § 1132(h), this Complaint has been served on the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## THE PARTIES

8.    Plaintiff Robert I. Unanue is an individual residing in Fulshear, Fort Bend County, Texas and may be served through his counsel of record.

9.    Defendant Goya Foods, Inc. is a corporation organized under the laws of the State of Delaware and is registered with the Texas Secretary of State (Filing No. 801822951) to do business in the state. It can be served through its registered agent, Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found. Among other significant operations in this state, Goya owns and operates a large North American processing center that sits on a 130-acre farm located west of Houston, where it employs hundreds of Texas workers.  On information and belief, Goya has an extensive retail and wholesale customer base in Texas and realizes substantial sales within the state, including in this district and division.

10.    Defendant Francisco R. "Frankie" Unanue is an individual residing in the state of Florida. Francisco Unanue can be served at 1643 Brickell Ave, Unit 4005, Miami, Florida 33129, or wherever he may be found.

## FACTUAL BACKGROUND

### A.  Goya Foods is founded by Robert Unanue's grandparents in 1936.

11.    In 1936, Spanish immigrants Prudencio Unanue Ortiz and his wife, Carolina Casal de Valdés, founded the predecessor of Goya Foods.[1]

12.    Goya started as a small storefront in Lower Manhattan. Today, Goya is the

---

[1] Goya Foods became Goya Foods Inc., a Delaware corporation, in 1975. Goya Foods Inc. is referred to as "Goya."

largest Hispanic-owned food company in the U.S. It has been publicly represented that Goya achieved $1.8B in annual sales.

13.     Robert "Bob" Unanue ("Unanue") is the grandson of Prudencio Unanue Ortiz and Carolina Casal de Valdés.

### B. Unanue goes to work for the family business at age 10 and, after 40 years, rises to President and CEO.

14.     In 1964, Unanue started working at Goya in Brooklyn packing olives when he was ten years old.

15.     Forty years later, Unanue rose to Chief Executive Officer and President of the company in 2004.

16.     Goya flourished under Unanue's leadership.

17.     From 2004 through 2024, Goya grew its bottom line in the range of ten times, far outstripping both the United States economy at large, and the stock market, during the same time frame.

18.     Not only is Goya a leading food company, but it is also a community leader through charitable causes, food donations, environmental efforts, and cultural programs.

19.     Unanue was integral to the growth of the business. But he was also important to the growth of Goya's community efforts. For example, Unanue launched Goya Cares, a global non-profit designed to combat child trafficking and related issues like abuse and mental health challenges. Unanue was also instrumental in Goya Gives, an initiative of Goya designed to bring food and provisions in the United States and around the world in response to natural disasters. Goya Gives donated five million pounds of food during the

Covid-19 epidemic under Unanue's leadership, in addition to nearly two million pounds a year during Unanue's tenure.

### C. Unanue's Deferred Compensation Agreement promises retirement benefits.

20.     Unanue entered into an Agreement for Deferred Compensation with Goya dated as of December 30, 2008 (the "Deferred Compensation Agreement").[2] The Deferred Compensation Agreement provides that, upon Unanue's termination by the company other than "for cause," he is entitled to a monthly benefit equal to 80% of his average monthly salary for the three years preceding his termination, for a total of 120 months. Ex. A at 1. In other words, Unanue was supposed to receive 80% of his recent salary for ten years following termination.

21.     Unanue did not have an employment contract and was paid between $350,000 and $500,000 annually over the prior three years before this lawsuit for his work as President and CEO. Unanue's compensation was far below the market rate for an executive of Unanue's experience, and for a company of the size and success of Goya.

22.     Unanue's Deferred Compensation Agreement styles itself as a "Top Hat Plan" under the Employee Retirement Income Security Act. And Goya elected itself to administer Unanue's "Top Hat Plan" under the terms of the agreement. *Id*. at 5.

### D. Unanue is summarily terminated without any cause after more than 60 years working for the family business.

23.     On or around February 5, 2025, Goya putatively terminated Unanue as President and CEO of the company. Unanue was initially informed that he was terminated

---

[2] The Deferred Compensation Agreement, as amended in 2020, is attached as Exhibit A.

orally. A day later, he received a letter (the "Termination Letter") confirming his purported termination.[3]

24.    Unanue was seventy at the time of termination. He had contributed sixty years of his life to the company that his family started.

25.    Goya gave Unanue no reason or explanation for his termination, and the Termination Letter provides none either. It only states broadly that "[o]ur understanding is that the termination was for cause as defined by the Deferred Compensation Agreement."

26.    Unanue requested that Goya identify the alleged cause for his termination but, to date, Goya has provided none.

27.    Notwithstanding that Goya has still not directly provided cause for Unanue's supposed termination, Unanue is informed and believes, and thereon alleges, that the following false and damaging statements (the "Defamatory Statements") have been made by a person or persons with actual or apparent authority to make statements on Goya's behalf, to others of and concerning Unanue:

     a.  Unanue aided and abetted mismanagement, malfeasance and unlawful conduct;

     b.  Unanue himself committed mismanagement, malfeasance, and unlawful conduct;

     c.  Unanue misused/misappropriated millions of dollars in Goya funds;

     d.  Unanue made false statements against Goya's interest;

     e.  Unanue created false records;

     f.  Unanue refused to cooperate with the Goya Board of Directors;

---

[3] The Termination Letter is attached as Exhibit B.

g. Unanue failed to protect Goya and its information technology;

h. Unanue mismanaged and damaged Goya and its information technology;

i. Unanue put his own interests above the interests of Goya and breached his duty of loyalty to the company; and

j. Unanue allowed a third-party to "loot" Goya, caused "waste" and benefited in "some covert" manner to the tune of millions of dollars.

28. The harmful and outrageous accusations of and concerning Unanue in paragraph 27(a)–(j) are absolutely false.

29. Unanue's cousin defendant Franscisco "Frankie" Unanue, a Goya executive and board member, included the above Defamatory Statements in a Fourth-Party Complaint that he filed on or around February 5, 2025 in an ongoing civil litigation currently pending in Bergen County, New Jersey.[4] Even so, Unanue is informed and believes, and thereon alleges, that Defendants made these statements to others before pleading them in the Fourth-Party Complaint and that these statements were made on their own accord and not in connection with that legal action.

30. Defendants then distributed one or more copies of Frankie Unanue's Fourth-Party Complaint and republished the Defamatory Statements contained therein to third parties, including (but not necessarily limited to) news reporters, foreseeably resulting in

---

[4] *Goya Foods, Inc., d/b/a Goya Foods of Florida, LLC v. Suvajit Basu, et al.*, Docket No. BER-L-6053-24, currently pending in the Superior Court of New Jersey, Bergen County, Law Division. Upon information and belief, Frankie Unanue, as a strawman for Goya, purposefully and maliciously shoehorned the Defamatory Statements against Unanue into the New Jersey action between Goya and a former Goya employee solely to further publish and propagate the Defamatory Statements. Indeed, Frankie Unanue ultimately withdrew the causes of action he leveled against Robert Unanue after being placed on notice that they were without legal and factual basis under New Jersey law. Unbelievably, Goya then re-alleged the same causes of action and defamatory statements from which Frankie Unanue rightfully retreated.

those statements being then reported to the public at large. See, e.g., 'This is a family issue': Allegations are flying behind the scenes at Goya Foods, Feb. 27, 2025, https://www.cnn.com/2025/02/27/business/goya-foods-family-run-board-ousts-ceo-it-department.

31.     Defendants, at the time they made the false and defamatory statements, knew that they were false and/or knew the statements were highly likely to be false. Defendants knew full well that Unanue had not mismanaged Goya and had never been disloyal to it. They knew that Unanue had not misappropriated any funds, nor allowed any third party to "loot" the company. They knew that he never mismanaged Goya's IT. They made these statements with the intent of harming Unanue, to gain an advantage in an ongoing dispute between the Goya executives and Unanue.

32.     On March 17, 2025, Unanue, Goya, and Frankie Unanue agreed to a litigation stand-down while the Parties explored alternative dispute resolution. The written stand-down agreement kept new litigation from being filed while the Parties worked toward resolution. The stand-down agreement also preserved all of the Parties' rights as they related to new claims during the stand-down period. The stand-down period lasted until 30 days after mediation concluded.

33.     Mediation concluded on May 13, 2025.

34.     The stand-down period ended on June 12, 2025.

35.     Unanue sent Goya and Frankie Unanue a letter demanding them to retract

the Defamatory Statements on July 31, 2025.[5]

36.     Further to the above, Unanue was also employed as the Administrador Unico of Goya en Espana, S.L. Unanue was also one of three Directors of GT Trading PR LLC, another entity in the Goya family of businesses. On the evening of May 21, 2025, Unanaue was informed that Frankie Unanue would be convening a "Special Meeting" of the Board of Directors of GT Trading PR LLC and one of the agenda items was the removal of Unanue as the Administrador Unico of Goya en Espana, S.L. This was highly unusual, as GT Trading PR LLC did not employ Unanue on behalf of Goya en Espana, S.L., and therefore had no ability to terminate his employment.

37.     Despite the purported notice of "Special Meeting" being procedurally incorrect on many levels, Unanue replied that he would be traveling at the proposed time and asked for the meeting to be rescheduled. Unanue never received a response. In fact, he was never informed as to whether the meeting took place, or the results of the meeting if it did.

38.     Upon information and belief, Frankie Unanue held the meeting and purported to replace Unanue as the Administrador Unico of Goya en Espana, S.L. with Frankie Unanue's brother, Carlos Unanue. Upon further information and belief, Unanue was also removed from his position at Goya Europa, S.L.

39.     Defendants' intent and motivation is to "erase" Unanue from Goya's history and destroy his reputation. All this despite the indisputable fact that, under Unanue's

---

[5] The retraction demand is attached as Exhibit C.

leadership, Goya grew to previously unimagined levels, and at the same time, Unanue became well-known as a great humanitarian and champion in the fight against human trafficking

40.     In sum, Unanue devoted his entire life to his family's company. He grew it on a business level, and as a community leader. Goya nevertheless summarily dismissed him on fabricated grounds to avoid its commitment to him for deferred compensation and to destroy the personal and business reputation he's built over his lifetime. This Court should hold Goya and Frankie Unanue responsible for their actions.

### CLAIM I – IMPROPER DENIAL OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AGAINST GOYA

41.     Unanue realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

42.     Unanue qualified for benefits under the Deferred Compensation Agreement when Goya terminated him.

43.     Goya's denial of Unanue's benefits following his termination violates Unanue's rights under the Deferred Compensation Agreement.

44.     Unanue is therefore entitled to all benefits due under the Deferred Compensation Agreement.

### CLAIM II– DEFAMATION AGAINST ALL DEFENDANTS

45.     Unanue realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

46.     Unanue is informed that Defendants orally communicated the Defamatory

Statements to others before pleading them in Frankie Unanue's Fourth-Party Complaint, and that Frankie also orally conveyed many or most of the Defamatory Statements to members of Goya's Board of Directors in or around January or early February 2025, which directly resulted in the Board terminating Bob's employment as President and CEO of the company on February 5, 2025.

47.     Beginning in or around February 2025, Defendants also distributed one or more copies of Frankie's Fourth-Party Complaint and further republished Defamatory Statements contained therein to third parties, including journalists.

48.     The Defamatory Statements about Unanue are libelous on their face and expose him to public hatred, contempt or ridicule, or financial injury or impeach Unanue's honesty, integrity, virtue or reputation.

49.     Unanue sent Goya and Frankie Unanue a retraction demand through counsel on July 31, 2025.

50.     As a proximate result of Defendants' publication of the Defamatory Statements, Unanue has suffered loss of his reputation, shame, mortification and injury to his feelings, all to Unanue's damage in a total amount to be proven at trial but in no event less that the jurisdictional minimum of this court.

51.     Defendants' publications of the Defamatory Statements about Unanue were not privileged.

52.     Because Defendants published the Defamatory Statements with common law malice, Unanue also seeks punitive damages in a total amount to be proven at trial, but

which may reach $100,000,000.

53.     Defendants published the Defamatory Statements about him with actual malice, knowing them to be false or with reckless disregard for the truth.

### CLAIM III – QUANTUM MERUIT AGAINST GOYA

54.     Unanue realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

55.     Unanue worked as Goya's President and CEO from 2004 through 2025. Goya flourished under his leadership.

56.     Unanue did not have an employment contract with Goya.

57.     Unanue received a salary from Goya for his work as President and CEO that was far below the market rate for similarly situated executives with his experience, success, and compared to Goya's size and profitability.

58.     Because Unanue's salary was far below the market rate for similarly situated executives with his experience, success, and compared to Goya's size and profitability, Goya received an unjust enrichment from his contributions.

59.     Unanue is therefore entitled to the value of all benefits due to him based on his contributions to Goya.

### ATTORNEYS' FEES

60.     Unanue requests an award of his reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g).

### PRE- AND POST-JUDGMENT INTEREST

61.     Unanue also seeks pre- and post-judgment interest on his recovery at the

maximum amount allowable by law.

**PRAYER**

Accordingly, Unanue requests the entry of a judgment against Goya, consistent with the above-stated causes of action, including all damages, benefits, attorneys' fees and costs, pre- and post- judgment interest, and all such other relief to which he may be justly entitled.

Date: August 1, 2025                     **LAWSON & MOSHENBERG PLLC**

By:  */s/ Nicholas R. Lawson*
Nicholas R. Lawson
(Texas Bar No. 24083367)
SDTX No. 2621981
2301 Commerce St., Suite 200
Houston, TX 77002
Tel: 903-316-9155
Nick.Lawson@lmbusinesslaw.com

-AND-

**HARDER STONEROCK LLP**

Ryan J. Stonerock (*Pro Hac Vice* forthcoming)
Dilan Esper (*Pro Hac Vice* forthcoming)
6300 Wilshire Blvd., Suite 640
Los Angeles, CA 90048
Tel: 424-203-1600
RStonerock@harderstonerock.com
DEsper@harderstonerock.com

-AND-

**FMS LAWYER PL**

Frank M. Smith (*Pro Hac Vice* forthcoming)

P.O. Box 219
Fort White, FL 32038-0219
Tel: 954-241-6947
Frank.Smith@fmslawyer.com


*Counsel for Robert Unanue*