**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Robert I. Unanue,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 25-3573** |
| | § | |
| **Goya Foods, Inc. and** | § | |
| **Francisco R. Unanue,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE**

Plaintiff Robert I. Unanue ("Bob") hereby opposes, with this omnibus opposition, the motions to dismiss or, in the alternative, transfer venue, filed by Defendants Goya Foods, Inc. ("Goya") and Francisco Unanue ("Frankie") (collectively, "Defendants"). [*See* Dkt. Nos. 16, 17.]

## I. <u>Introduction</u>

Defendants moved to dismiss a federal ERISA benefits claim without even citing the federal statute that governs personal jurisdiction over that claim. Under 29 U.S.C. § 1132(e)(2), ERISA authorizes nationwide service of process, so the due-process question on Count I is whether Goya has minimum contacts with the *United States* – not with Texas. Goya, a Delaware corporation headquartered in New Jersey, with hundreds of employees in Texas alone, cannot dispute those contacts and it never tries. Instead, both motions analyze only the Fourteenth Amendment and Texas long-arm framework that governs ordinary diversity cases. Defendants applied the wrong test to the lead claim– all while accusing Bob of misleading the Court.

These motions fail for three independent reasons. *First*, ERISA's nationwide service provision establishes personal jurisdiction over Goya on Bob's denial-of-benefits claim, and the Court may exercise pendent personal and pendent party jurisdiction over the related defamation and quantum meruit claims. *Second*, Goya and Frankie are subject to specific jurisdiction in Texas under *Calder v. Jones*: they aimed defamatory statements at a Texas resident – falsely branding Bob a thief who looted the company his grandparents founded – and delivered those statements to CNN knowing the brunt of the injury would fall on Bob in Texas, where he lives, works, and has watched business relationships and his reputation collapse. *Third*, Goya has a significant, decades-long Texas presence accounting for half of Goya's domestic canning production, hundreds of employees, and more than $300 million in annual sales flowing through facilities in this District. There is no good reason this case should be litigated in the District of New Jersey.

Taken together, neither Goya nor Frankie can credibly argue that this Court lacks personal jurisdiction. Nor that venue is improper. This Court should therefore deny their motions.

## II. <u>Relevant Facts</u>

### A. <u>Bob devotes his entire life to building the family business.</u>

Bob's story is a quintessential example of the American Dream. His Spanish-immigrant grandparents founded the predecessor to defendant Goya Foods, Inc. in 1936, with humble roots as a small storefront in Manhattan. [Dkt. No. 1 (Complaint), ¶¶ 11, 12.] Bob then worked for his family's business for essentially his entire life, starting out packing olives in 1964 when he was a child and rising the ranks to eventually become the President and CEO in 2004. [*Id.*, ¶¶ 1, 14, 15.]

During his time as President and CEO, Bob frequently traveled for work but spent most of his time in Texas and New Jersey, and in 2018 eventually moved to Fort Bend County, Texas—

where he still resides today—to live and work as a permanent resident. [Id. ¶ 8; Declaration of Plaintiff Bob Unanue ("Bob Dec."), ¶ 2.]

Under Bob's leadership, Goya grew its bottom line roughly tenfold from 2004 to early 2025, and launched multiple charitable efforts, including: combating child trafficking and abuse, donating food to natural disaster victims around the world, and donating five million pounds of food during the Covid-19 pandemic. [Dkt. No. 1, ¶¶ 17, 18.] In sum, Goya became a more profitable and more socially-minded company under Bob's leadership.

During his tenure at Goya, Bob entered into an agreement for Deferred Compensation with Goya dated December 30, 2008 (the "Deferred Compensation Agreement"). [*Id.*, ¶ 20, Ex. A.] The Deferred Compensation Agreement provides that, upon Bob's departure from Goya—other than termination "for cause"—he is entitled to a monthly benefit equal to 80% of his average monthly salary for the three years preceding his termination, for a total of 120 months. [*Id.*]

**B. <u>Bob's cousins abruptly terminate him without explanation or reason.</u>**

On or around February 5, 2025, despite the company's significant financial and charitable growth realized during his time as President and CEO, Goya purported to orally terminate Bob, initially offering no reason or explanation for the purported termination. [*Id.*, ¶¶ 23, 25.] Frankie and his brother Carlos "Carli" Unanue called Bob while Bob was in his office in Brookshire, Texas notifying him that he was terminated. [Bob Dec. at ¶ 18.] The next day, Bob received a letter confirming his termination, which was addressed to his home in Fulshear, Texas and signed by both Frankie and Carli. [*Id.* at Ex. F.]

To be clear, Goya fired Bob at age seventy, after he devoted six decades of work and loyalty to the company his grandparents started. [Dkt. No. 1 at ¶ 24.] Even more shocking, Defendants made the following false and damaging statements of and concerning Bob:

a. Bob aided and abetted mismanagement, malfeasance and unlawful conduct;
b. Bob himself committed mismanagement, malfeasance, and unlawful conduct;
c. Bob misused/misappropriated millions of dollars in Goya funds;
d. Bob made false statements against Goya's interest;
e. Bob created false records;
f. Bob refused to cooperate with the Goya Board of Directors;
g. Bob failed to protect Goya and its information technology;
h. Bob mismanaged and damaged Goya and its information technology;
i. Bob put his own interests above the interests of Goya and breached his duty of loyalty to the company; and
j. Bob allowed a third party to "loot" Goya, caused "waste" and benefited in "some covert" manner to the tune of millions of dollars.

[*Id.* ¶ 27 (the "Defamatory Statements").]

Frankie, also a Goya executive and board member, included the Defamatory Statements in a Fourth-Party Complaint that he filed on or around February 5, 2025 in an ongoing civil lawsuit currently pending in Bergen County, New Jersey, styled *Goya Foods, Inc., d/b/a Goya Foods of Florida, LLC v. Suvajit Basu, et al.*, Docket No. BER-L-6053-24 (the "New Jersey Action"). [Id. ¶ 29.] Frankie, as an officer for Goya, purposefully and maliciously shoehorned the Defamatory Statements against Bob into the New Jersey Action between Goya and a former Goya employee solely to publish and propagate the Defamatory Statements. [Id. ¶ 29 n.4.]

Significantly, Frankie made the Defamatory Statements to others *before* pleading them in the Fourth-Party Complaint, not in connection with that action. [*Id.*, ¶ 29.] Defendants then distributed copies of Frankie's Fourth-Party Complaint and republished the Defamatory Statements contained therein to third parties, including, but not limited to, journalists, foreseeably resulting in those statements being reported to the public at large.[1] [*Id.*, ¶¶ 30, 47.] *See Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 47–48 (Tex. 2021) (judicial proceedings

[1] *See*, *e.g.*, Feb. 27, 2025 CNN Article, "Allegations are flying behind the scenes at Goya Foods", https://www.cnn.com/2025/02/27/business/goya-foods-family-run-board-ousts-ceo-it-department.

privilege does not apply "to statements to the media or the public in which parties or their attorneys publicize defamatory allegations raised in a lawsuit").

### C. Defendants refuse to engage in discovery and disregard the Court's order.

Defendants ask this Court to dismiss Bob's claims while withholding much of the jurisdictional discovery that bears directly on that question. In November 2025, Bob served narrowly tailored, agreed-upon jurisdictional discovery on each Defendant[2]—only five interrogatories, five requests for admission, and five requests for production. After seeking an receiving two extensions, Defendants served responses on January 23, 2026 that consisted almost entirely of objections and statements that substantive responses would follow entry of a confidentiality stipulation; no documents were produced. Defendants' February 2, 2026 "supplemental" responses were materially the same, and Frankie's February 25 production consisted of only three documents.

Court involvement yielded modest progress. After Bob raised the issue by letter to the Court on April 6, 2026, Goya produced approximately 128 documents the next day. At the June 12, 2026 discovery hearing, the Court narrowed Bob's requests and ordered Defendants to supplement their responses within thirty days—that is, by July 13, 2026. That deadline passed without supplementation, prompting Bob's counsel to inquire on July 14 as to the status. It was only then that Defendants' counsel revealed that for personal reasons an extension was needed—after the deadline had passed.

It is now a full year since Bob originally filed his claims on August 1, 2025. [ECF No. 1]. Very little documentation has been provided. And most discovery has been stonewalled – with Defendants claiming that only documents baring a Texas relationship are relevant. But as this brief

[2] Defendants refused to participate in jurisdictional depositions while Bob's brief was outstanding. Bob expects Defendants to continue their sword and shield strategy and seek Bob's deposition now that his brief is filed.

shows throughout, documents with a Texas relationship are not the only documents that are relevant to the jurisdictional analysis. Documents supporting a "common nucleus of facts" are too.[3] If this Court agrees and also finds that the current record does not support personal jurisdiction, Bob should be afforded an opportunity to retrieve the jurisdictional discovery he's requested and replead rather than face dismissal.

## III. Personal Jurisdiction Standards

Rule 12(b)(2) allows for dismissal of an action for lack of personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). "A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The Texas long-arm statute extends to the limits of due process. *Id*. To satisfy due process, a plaintiff must demonstrate that: (1) the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Id*. "Jurisdiction may be general or specific. Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully direct at the forum state." *Id*. (cleaned up)

However, where a federal statute provides for nationwide service of process, the due-process inquiry is whether the defendant has minimum contacts with the *United States*. *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).

[3] Bob sought documents confirming that his claims share a common nucleus of fact. Defendants objected because they also went to "the merits" are were according to them not jurisdictional. At the June 12, 2026 discovery hearing the Court heard these arguments and at that time largely sided with Defendants by limiting discovery to material with a Texas connection. [Declaration of Nicholas R. Lawson ("Lawson Dec."), Ex. A, at 4:21–5:19, 12:7–-12, 12:24–13:6]. If the Court does not outright deny the motions to dismiss, Bob is hopeful that before the Court rules for dismissal, it will allow this merits discovery because it goes to pendent personal and pendent party jurisdiction.

## IV. Arguments and Authorities

As Bob attests to at length in his accompanying declaration, Goya's connections with Texas are such that it "should reasonably anticipate being hauled into court" here. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). Very limited jurisdictional discovery was offered by Defendants, but Goya, and in turn Frankie, have significant and pervasive contacts with Texas. [*See* Bob Dec., ¶¶ 5–17.] Indeed, Goya has conducted business here since the early 1990s, and more recently a Goya press release from October 2021 states:

> Goya Foods…is proud to announce an $80 million expansion of its manufacturing and distribution facility in Brookshire, Texas. The expansion includes the purchase of new, state of the art food processing equipment that will enable the company to double production capacity in order to meet the increased consumer demand for its products. […] Goya's Texas facility that sits on a 130-acre farm has served as the prime hub for the manufacturing and distribution of Goya products in the West and provides key access to a skilled workforce, a favorable business climate, railroad transportation, and a launching pad for global export.[4]

Among other things, Goya employs approximately 300 people in Texas, makes a sizable profit from its Texas facilities, and has maintained bank accounts in Texas. [*See* Bob Dec., ¶¶ 6–14.] Moreover, Goya executives, including Frankie, routinely travel to Texas for work. [*Id.*, ¶ 15.] In fact, Texas accounts for about one-third of Goya's manufacturing profits. [*Id.*, ¶ 11.]

Goya's contacts with Texas and the sales it receives from those contacts are enormous; thus, Goya purposefully availed itself of the benefits and protections of Texas with its large presence and still-growing economic activity. [*Id.* ¶¶ 11–15.] In addition, the Court also has jurisdiction over each of Bob's claims through ERISA's jurisdictional provisions, pendent personal, and pendent party jurisdiction.

---

[4] *See* Oct. 21, 2021 Press Release, https://www.goya.com/en/press/texas-expansion-1/; Bob Dec., ¶¶ 5–17.

### A. **<u>ERISA's nationwide service provision establishes jurisdiction over Goya for Bob's denial of benefits claim.</u>**

Defendants dispute personal jurisdiction over Bob's ERISA and quantum meruit claims, but they fail to conduct the correct analysis for either. Setting aside whether it may be considered "at home" in Texas, Goya is subject to personal jurisdiction over Bob's ERISA claim by the plain language of ERISA. Under ERISA, "[w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The Fifth Circuit has likewise found that "ERISA, 29 U.S.C. § 1132(e)(2) provides for nationwide service of process." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 825 (5th Cir. 1996). That means, "to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States," not the particular state for which suit is brought. *Bellaire*, 97 F.3d at 825 (quoting *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994)). In *Busch*, the Fifth Circuit specified that in such a case "the relevant sovereign is the United States," and held that the due process concerns of the Fifth Amendment are satisfied and "traditional notions of fair play and substantial justice" are not offended where a court "exercise[s] personal jurisdiction over a defendant residing within the United States." *Id*.

In *Bellaire*, the defendant, a nonprofit corporation, argued that the court could not exercise personal jurisdiction over it because it was operating solely in a state other than the forum state. *Id*. at 825. The court, however, noted that where "a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process [here, ERISA], the relevant inquiry is whether the defendant has had minimum contacts

with the United States." *Bellaire*, 97 F.3d at 826 (quoting *Busch*, 11 F.3d at 1258). It thus found that the district court had properly exercised personal jurisdiction over the defendant based on its contacts with the United States. *Id*.

Goya improperly denied Bob's benefits due under an agreement governed by ERISA. [*See* Bob Dec., ¶¶ 18-20.] Bob is due payment under the ERISA plan including 120 monthly payments on a go-forward basis, which he would receive in Texas where he resides. [*Id*. at ¶ 20.] Goya is incorporated in, has its principal place of business in, and maintains multiple facilities and corporate offices in the United States and more than meets the minimum contacts standard. [ECF No. 1 at ¶ 9; Bob Dec., ¶¶ 4, 5–7, 12, 14–17.] Accordingly, this Court can exercise personal jurisdiction under ERISA's nationwide service of process provisions. In fact, that would be true even if Goya operated exclusively outside of Texas, like the defendant in *Bellaire*.

Even under a fairness gloss, Goya can't credibly argue that litigating in Texas is inconvenient, much less Constitutionally unfair. Goya operates a major packing and distribution facilities in this district, employs hundreds, buys 120 million cans from Texas can-makers, generates 1/3 of its manufacturing profits from Texas operations, and trucks more than fifty truckloads of goods between Houston and Dallas ***every single week***. [*See* Bob Dec., ¶¶ 5–17.] If Goya is not "at home" in Texas, it certainly is not unfairly hailed here.

Goya is therefore subject to personal jurisdiction in this Court under ERISA.

**B. The Court should exercise supplemental jurisdiction over Bob's state-law claims for defamation and quantum meruit against Goya and Frankie because they all share a common nucleus of fact.**

The Court should also exercise supplemental jurisdiction over Bob's state-law claims for defamation and quantum meruit against Goya and Frankie. Pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same

nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 696 (S.D. Tex. 2011) (citing *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008)); see also *Conwill v. Greenberg Traurig, L.L.P.*, 2009 WL 5178310, at *8 (E.D. La. Dec. 22, 2009) (discussing pendent personal jurisdiction); *Pinnacle Label, Inc. v. Spinnaker Coating, LLC*, 2009 WL 3805798, at *6 (N.D. Tex. Nov. 12, 2009) (same).)

> In other words, once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction. A defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended in this circumstance.

*Id.* (cleaned up) *(citing Rolls-Royce Corp.*, 576 F. Supp. 2d at 783).

Similarly, the Court can extend pendent party jurisdiction over Frankie's claims. "Under pendent party jurisdiction, federal claims are levied against one defendant, while state law claims are alleged against a different, nondiverse defendant." *Rolls-Royce Corp.*, 576 F. Supp. 2d at 792. (cleaned up and citations omitted). "If the factual basis for both of these claims is sufficiently intertwined, a federal court can adjudicate the state law claims against the pendent party." *Id*. (cleaned up and citations omitted). "The federal claim and the state-law claims are sufficiently intertwined when the claims derive from a common nucleus of operative fact and the state and federal claims ordinarily would be tried in one judicial proceeding." *Id*. (cleaned up and citations omitted).

Here, Bob's improper denial of benefits, defamation, and quantum meruit claims share the same nucleus of facts. Bob's ERISA plan ties the counts together: Count I enforces it. [ECF No.

1, ¶¶ 20, 22, 42–44; Bob Dec. ¶ 20.] Count II attacks the false statements invoked to trigger its "for cause exception. [ECF No. 1, ¶¶ 25–27.] And Count III seeks the value of services Bob rendered at below-market pay within the same compensation structure. [*Id.* ¶¶ 21, 56–57.] The February 5, 2025 termination triggers every claim. And the disputed facts — whether "cause" existed — goes to the ERISA and state-law claims because the content of the assert "cause" are the defamatory statements themselves. Likewise, the same common actor is involved — Frankie.

Goya agrees: "[t]here is no doubt that all claims against Bob in the New Jersey Action arise from the same common nucleus of facts that Bob has raised in his lawsuit here," and that this action "arises from the same common nucleus of operative facts as the New Jersey Action." [ECF No. 16 at 2, 3; ECF No. 17 at 2 (Frankie incorporating Goya's factual assertions).].

Given the common nucleus between these claims, pendent personal jurisdiction and pendent party jurisdiction applies even if the Court doesn't have personal jurisdiction over the state-law claims, or Frankie.

### C. <u>This Court has jurisdiction over Bob's defamation claim</u>

Bob was defamed by Frankie and Goya by statements that Frankie (a Goya executive) made. The Fifth Circuit applies respondeat superior to hold corporations vicariously liable for the torts of their officers and agents. *See United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 348 (5th Cir. 2013) ("when Congress creates causes of action in tort, we must assume 'it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.'").

While state-law principles within the Fifth Circuit may vary, "[t]he imposition upon an employer of vicarious liability for torts of its agents is limited by the proposition that the tort must have been committed while the agent was acting within the scope of employment." *City of Green*

*Cove Springs v. Donaldson*, 348 F.2d 197, 202 (5th Cir. 1965). "[T]he scope of employment is considerably broader than explicitly authorized acts of the employee…[and] [t]he question whether a tort committed by an agent is within the scope of his employment is normally to be determined by the jury…" *Id.* at 202; *see also Moreno v. LaSalle Corrections V LLC*, 792 F. Supp. 3d 727, 733 (W.D. Tex. 2025).

Here, Frankie made the Defamatory Statements within the scope of his employment because his conduct was authorized by Goya or incidental to conduct authorized by Goya. *See Frias v. Hernandez*, 142 F.4th 803, 809 (5th Cir. 2025). Indeed, the Defamatory Statements were made (i) during Frankie's time as an executive of Goya; (ii) regarding the termination of another executive of Goya; (iii) purporting to explain *Goya's* basis for terminating that executive; and (iv) (falsely) asserting bad acts that Bob committed against *Goya*, such as his supposed misuse of *Goya's* funds. [Dkt. No. 1, ¶ 27.]

The Defamatory Statements exclusively concerned Goya and its business decisions, and were aimed at advancing Goya's own narrative regarding those business decisions. In other words, the Defamatory Statements were made *for* Goya. Frankie did not make these remarks in a vacuum removed from the company, but on Goya's behalf to advance Goya's interests and public image. Accordingly, Bob's defamation claim is rightfully brought against Frankie and Goya.

The Court has jurisdiction over Bob's defamation claim for several reasons.

*First*, Defendants' connections with Texas are such that they "should reasonably anticipate being hauled into court" here. *World-Wide Volkswagen*, 444 U.S. at 297; *see* Bob Dec., ¶¶ 6–14.

*Second*, both the "effects" and "aim" of Defendants' Defamatory Statements implicate Texas; therefore, specific personal jurisdiction over Defendants for Bob's defamation claim is also proper, under *Calder v. Jones*, 465 U.S. 783 (1984).

Specific personal jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific personal jurisdiction may be asserted over a defamation defendant when the effects of the defamation are felt within the forum state. *See Calder*, 465 U.S. at 787. Indeed, when determining whether California had jurisdiction over an out-of-state defendant for tortious activity committed out of state, the Supreme Court in *Calder* emphasized: "The fact that the actions causing the effects in California were performed outside the State did not prevent the State from asserting jurisdiction over a cause of action arising out of those effects." *Id*.

The "effects test" approved by *Calder* is routinely used within the Fifth Circuit. *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999) ("When a nonresident defendant commits…an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses.") (citing cases); *Healix Infusion Therapy, Inc. v. HHI Infusion Services*, No. H-09-3440, 2010 WL 2277389, at *3 (S.D. Tex. June 3, 2010) ("In cases of intentional torts like defamation, the Fifth Circuit also applies the 'effects test' of *Calder v. Jones*…").

In the Fifth Circuit, "jurisdiction under *Calder* can be established only when an author or publisher 'aims' an allegedly defamatory story at a forum state, knowing the 'effects' will be felt there." *Kuykendall v. Amazon Studios LLC*, No. 5:20-CV-219, 2022 WL 19337992, at *4 (S.D. Tex. Mar. 18, 2022) (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005)). "Thus, a showing of 'effects' in a forum, without more, is insufficient—a showing of 'aim'

is also required." *Kuykendall*, *2022* WL 19337992, at *4 (citing *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002)).

### i. ***Effects*: the Defamatory Statements injured Bob in Texas**

To satisfy the "effects" component of the *Calder* analysis, the brunt of the injury must be felt in the forum state. *See Calder*, 465 U.S. at 789. The relevant factors include plaintiff's emotional distress and the injury to plaintiff's professional reputation. *Id*.

Here, Bob felt the brunt of the injury in his home state of Texas. At the time of his termination as well as when the Defamatory Statements were made, Bob lived in Fort Bend County, Texas (where he still resides today). [Dkt. No. 1, ¶ 8.] Bob's emotional distress is and was felt in Texas where he resides. Further, the damage to Bob's professional reputation is felt most significantly in Texas because that is the state where he works and interacts with people, including business associates, the most. [Bob Dec., ¶ 2.]

Bob has been a permanent resident of Texas since 2018. [*Id*.] It naturally flows that Bob's place of residence and business is the forum in which he has felt the brunt of the injury. *Calder*, 465 U.S. at 789–90 ("that the brunt of that injury would be felt by respondent in the State in which she lives and works" was sufficient for a California court to exercise jurisdiction over Florida defendant); *Kuykendall*, WL 19337992, at *4 (Plaintiff living in Texas and brunt of injury felt in Texas sufficient for "a *prima facie* showing that *Calder*'s effects test has been satisfied."); *Baker Petrolite Corp. v. Myers*, No. H-09-1216, 2009 WL 10692156, at *7 (S.D. Tex. Aug. 10, 2009) (specific jurisdiction proper because tortious conduct outside Texas was "likely to impact current or potential business Baker would have in Texas").

Accordingly, as further detailed in Bob's supporting declaration, the "effects" component of the analysis is satisfied here. [*See* Bob Dec., ¶¶ 1–4, 21–30.]

### ii. *Aim*: the Defamatory Statements were aimed at Bob in Texas

The "aim" prong is also satisfied here. When defamation is alleged against a media company, journalist, or other news outlet, the Fifth Circuit holds that "[t]he 'aim' of the plaintiff under the *Calder* test must be demonstrated by showing that (1) the subject matter of and (2) the sources relied upon for the article were in the forum state." *Fielding*, 415 F.3d at 426 (citing case). But as here where the defendants are not media companies or journalists relying on external sources logic dictates that the research component is inapplicable. *See Clemens v. McNamee*, 615 F.3d 374, 385 n.5 (5th Cir. 2010) (Haynes, J., dissenting) ("The 'research' prong of *Calder*, *Revell*, and *Fielding* is irrelevant in this case because McNamee is not a journalist relying on external sources."). Indeed, the defendants in *Calder, Fielding, and Revell* were journalists and news outlets. *Calder*, 465 U.S. at 783; *Fielding*, 415 F.3d at 422; *Revell*, 317 F.3d at 469.

Here, Defendants are not journalists; Goya produces and distributes food, not news, and Frankie is an executive of Goya, not a journalist. Defendants made the Defamatory Statements *to* third-party news outlets, not *as* news outlets. [Dkt. No. 1, ¶¶ 30, 47.] In other words, Defendants acted as the witness and source for the subsequent reporting of their Defamatory Statements, rendering the "sources" prong inapplicable here. *See Clemens*, 615 F.3d at 385 n.5 ("Unlike a journalist, such an alleged eyewitness would never be conducting 'research' in Texas or anywhere else on whether he himself is telling the truth."). Thus, the "subject matter" prong is determinative for establishing Defendants' aim under the *Calder* analysis in this matter.[5]

To satisfy the "subject matter" component, the forum state must be the "focal point" of the defamatory statements. *Calder*, 465 U.S. at 789. Whether a forum is deemed the focus is determined on a case-by-case basis, but "[c]ritically, the effects test does *not* require that a

[5] Even if the "research" prong applies here, Defendants' research still necessarily included the purported acts and omissions of Bob, a Texas resident. Thus, Defendants' most valuable "source" was a Texas resident.

defendant single out a particular jurisdictional forum in some unique way." *Rusesabagina v. GainJet Aviation, S.A.*, No. 24-50630, 2025 WL 2674549, at *5 (5th Cir. Sept. 18, 2025) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)) (emphasis added). And "[j]urisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

"So long as the defendant engages in conduct purposefully directed toward the forum, then a court can exercise personal jurisdiction over him." *Rusesabagina*, 2025 WL 2674549, at *5 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)). "This remains true even if a defendant simultaneously directs his intentional conduct toward a different forum." *Rusesabagina*, 2025 WL 2674549, at *5 (citing *Guidry*, 188 F.3d at 629–30; *Calder*, 465 U.S. at 785 (exercising jurisdiction in California even though the defendant was "a national weekly newspaper with a total circulation of over 5 million")). "In other words, 'conduct directed at other jurisdictions does not negate…purposeful availment of [another state].'" *Rusesabagina*, 2025 WL 2674549, at *5 (quoting case).

Here, Texas was the focal point of the Defamatory Statements because the subject matter almost exclusively concerned a Texas resident (Bob) and Defendants knew the brunt of the injury would therefore be felt in Texas. *See Revell*, 317 F.3d at 475 ("Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test."). Defendants knew Texas was Bob's home state and acknowledge in a discovery response that the Defamatory Statements would be heard by Bob in Texas. [Lawson Dec., Ex. B at Request No. 2.] By sharing the Defamatory Statements with large news outlets, such as CNN, Defendants *knew* they would be broadcasted and felt by Bob, at minimum, in Texas. *See Arthur v. Stern*, No. H-07-3742, 2008 WL 2620116, at *13 (S.D. Tex. June 26, 2008) (personal jurisdiction for

defamation claim proper for "broadcast statements to the nation, including Texas, about the Texas activities of a Texas resident."). Put simply, Defendants knew what they were doing.

The facts here are stronger than in other cases where personal jurisdiction over a nonresident defendant was upheld; indeed, the Fifth Circuit has held that *one long-distance telephone call* into the forum state may be sufficient to establish personal jurisdiction. *See Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332–33 (5th Cir. 1982). Similarly, in *Ramm v. Rowland*, 658 F. Supp. 705 (S.D. Tex. 1987), a Texas plaintiff brought suit against a New Jersey defendant for tortious activity committed via phone calls to Texas; the Court, citing *Calder*, among other cases, noted "that as long as the defendant's actions were *purposefully directed* toward an out-of-state resident, absence of actual physical contact with the state will not defeat personal jurisdiction." *Ramm*, 658 F. Supp. at 708. The court denied the defendant's motion to dismiss, or in the alternative transfer, and emphasized: "[t]he consequences of [Defendant's] acts created impact on the Plaintiff in Texas. Texas has a significant state interest in redressing injuries that one of its citizens suffers at the hands of an out-of-state citizen." *Id.* at 708–09. The same legal principles and public policy apply here; Defendants' conduct here was *purposefully directed* toward a Texas resident, Bob, and was *purposefully directed* to create consequences for Bob in Texas, which it did. [*See* Bob Dec., ¶¶ 21–30.] Texas therefore has jurisdiction to adjudicate this matter, and a significant state interest in doing so.

Defendants may argue that portions of the Defamatory Statements concern a third party who does not reside in Texas and/or activity that might have taken place outside of Texas, but these characterizations do not rebut the fact that the Defamatory Statements by and large concern a Texas resident and alleged misconduct committed in Texas. *See Arthur*, 2008 WL 2620116, at *13 ("The fact that multiple topics were discussed…does not diminish the geographic focus of the

statements about [Plaintiff].”). Even if the Defamatory Statements were not exclusively discussing Bob, the primary focus was indeed Texas activities by a Texas resident, which were subsequently broadcasted in Texas.

Thus, the absence of an explicit phrase in the Defamatory Statements singling out Texas does not preclude a finding that Texas was the focal point. Bob’s conduct, as falsely asserted in the Defamatory Statements, would have been performed substantially in Texas, given it was his place of residence during the relevant time period. Defendants knew they were targeting a Texas resident about Texas conduct and knew the Defamatory Statements would be broadcasted, and would create consequences, in Texas. Therefore, the “aim” prong is satisfied here.

*Third*, in addition to the independent grounds above, this Court also has supplemental jurisdiction for Bob’s defamation claim. *See Peacock*, 516 U.S. at 354. Bob’s defamation claim bears a logical relationship with his 29 U.S.C. § 1132(a)(1)(B) claim. These claims concern the same parties, the same time period, and the same core facts as outlined above.

An analogous case is *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 732 (S.D. Tex. 2010). There, a Texas district court found supplemental jurisdiction proper over defamation, libel, and slander claims that were factually intertwined with Fair Housing Act claims, noting that both sets of claims involved the same parties, time period, and events at board meetings. *Id.* The court concluded by stating, “These facts justify retaining jurisdiction over the defamation claims out of an interest of judicial economy.” *Id*. Jurisdiction is therefore appropriate here.

**D. <u>Venue is proper in the Southern District of Texas.</u>**

Lastly, Defendants argue that if they can’t get dismissal then they should get a transfer to the District of New Jersey. But venue is proper here for two reasons. First, ERISA’s venue provision confirms this district is “where the breach took place” because it is where Bob was terminated and

where the benefits would have been received. 29 U.S.C. § 1132(e)(2); *Windmill Wellness Ranch, LLC v. Blue Cross*, No. SA-19-CV-1211-OLG, 2023 WL 4842453, at *3 (W.D. Tex. July 27, 2023) (construing "where the breach took place" as "where the beneficiary receives or was to receive benefits"); [Bob Dec. at ¶¶ 18–20.] Second, venue is proper for Bob's state-law claims where a substantial part of the events took place and he received his termination call in Texas, his termination letter in Texas, he worked from his office in Texas, and bore the brunt of the defamation injury in Texas. 28 U.S.C. § 1391(b)(2); [Bob Dec. at ¶¶ 21–30.]

This Court should also decline to transfer the case to the District of New Jersey because Bob's forum choice deserves deference. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008). And transferring consolidates nothing because the New Jersey Action is in Bergen County Superior Court. Transfer would be to the District of New Jersey. Further, the witnesses to Bob's injuries are largely in Texas, Bob is in Texas, the Goya facility that Bob worked from is in Texas, and Frankie travels to Texas on Goya business. New Jersey also makes little sense for Frankie who is a Florida resident. Certainly, Defendants have not met their burden to show that New Jersey is "clearly more convenient." *Id*. And last, the Court should discredit Defendants' requests to transfer the case to New Jersey when they refused to respond to any discovery unless it aimed at Texas, or had a Texas connection. To be clear, Bob requested information related to his claims going to New Jersey and not only did Defendants object to it, but they obtained a ruling from this Court limiting the discovery largely to acts in Texas, or with a Texas connection. [Lawson Dec. Ex. A, at 4:21–5:19, 12:7–12, 12:24–13:6.]

## V. CONCLUSION

Bob respectfully requests that the Court deny Defendants' motions in their entirety. This Court has obvious personal jurisdiction over Goya for Bob's ERISA claim. The Court can also

exercise pendent personal jurisdiction over Bob's defamation and quantum meruit claims against Goya. And it can assert pendent party jurisdiction for the defamation claim against Frankie. But it doesn't need to. Frankie directed the defamations against Bob into Texas knowing they would hurt Bob in Texas. In sum, this Court has several avenues to exercise personal jurisdiction over Goya and Frankie. And it should so that this case can proceed to the merits.

Date: August 13, 2026

**LAWSON & MOSHENBERG PLLC**

By: */s/ Nicholas R. Lawson*
Nicholas R. Lawson (SDTX No. 2621981)
2301 Commerce St., Suite 200
Houston, TX 77002
Tel: 903-316-9155
Nick.Lawson@lmbusinesslaw.com

-AND-

**HARDER STONEROCK LLP**

Ryan J. Stonerock (*Pro Hac Vice*)
Henry L. Self (*Pro Hac Vice*)
6300 Wilshire Blvd., Suite 640
Los Angeles, CA 90048
Tel: 424-203-1600
RStonerock@harderstonerock.com
HSelf@harderstonerock.com
DEsper@harderstonerock.com

-AND-

**FMS LAWYER PL**

Frank M. Smith (*Pro Hac Vice*)
P.O. Box 219
Fort White, FL 32038-0219
Tel: 954-241-6947
Frank.Smith@fmslawyer.com

*Counsel for Robert Unanue*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notice of such filing to all counsel of record.

*/s/ Nicholas R. Lawson*
Nicholas R. Lawson